[*General Term, April,* 1872.]

## BEHRENS *v.* LEUCHT, ADM'R.

In 1863, N. died, appointing, by his will, his brother, A. N., executor. Before the death of N., plaintiff had loaned him $767, and two years after his death the plaintiff loaned the executor, for the benefit of the estate, the further sum of $2,633, and such subsequent loan went to the benefit of the estate. In 1869, A. N. resigned his executorship, and P. H. L. was appointed administrator *de bonis non.*

*Held,* that suit was properly brought against P. H. L., the administrator *de bonis non,* for the money so loaned by the plaintiff, and that the estate of N. was liable for such money.

*Mallon & Coffey,* and *Kebler & Whitman,* for plaintiff.

*Tildens, Hyman & Schroeder,* for defendant.

O'CONNOR, J.   This case comes into this court upon a reservation of a motion for a new trial.

In March, 1863, Francis Nulsen died, leaving, by his will, all his real and personal property to his wife, so long as she remained a widow, and upon her marriage to his children. She still remains his widow.   He appointed Anthony Nulsen, his brother, executor.   Francis Nulsen, in his lifetime, carried on the tobacco business in Cincinnati, and his brother Anthony, as executor, continued to carry on the same business, at the same place, with the old sign over the door, for the benefit of the estate, until the year 1869, when he resigned, and Peter H. Leucht, the present defendant, was appointed administrator *de bonis non.*

It is in evidence that at the time of the death of Francis Nulsen, his personal assets would have fallen far short of paying the debts, and that, by continuing the business, all these debts were paid off, and large profits made for the estate, which were faithfully accounted for and paid to the estate by Andrew Nulsen, the executor, who charged nothing

for his services; and that the widow is now in possession of the whole estate, save such assets as may be in the hands of the administrator *de bonis non.* No creditors are interested in the result of this suit, and the only question before us is, whether the estate is responsible to the plaintiff for the amount claimed in his petition.

Some time before the death of Francis Nulsen, the plaintiff had loaned him the sum of $767, which was due at the time of Nulsen's death. On July 8, 1865, two years after Nulsen's death, the plaintiff, John Behrens, loaned to Anthony Nulsen, the executor, on the credit of the estate, the further sum of $2,633, thus making the entire indebtedness at that time $3,400, and interest on the $731. The $2,633 were immediately deposited in bank, either to the credit of Francis Nulsen, in whose name the business was carried on, or in the name of Anthony Nulsen, executor, the evidence not clearly showing which, and was used in paying debts of the estate and in carrying on the business, out of the profits of which the debts were also being paid. The evidence shows clearly that this money was used for the benefit of the estate, and that the estate derived the benefit of it, and that Andrew Nulsen administered the estate both faithfully and generously, charging nothing for his six years' services. The $767 have been paid, and the interest upon it, partly by Andrew Nulsen, and partly by Peter H. Leucht, the present defendant.

Upon the trial below the jury returned a verdict for the plaintiff for $2,666.02. A motion was made for a new trial, which has been reserved here upon the evidence and the charges of the court.

The question now before us is, whether, admitting that the estate derived the benefit of this money, and that it was borrowed by the executor for the benefit of the estate, the estate is liable to the plaintiff for the acts of the executor, and whether this action will lie against the administrator *de bonis non* as the successor of the executor. No authority was given by the will to carry on the business of the de-

ceased, nor was any authority given the executor by any court.

It is claimed by counsel for the defendant, in an able argument, that the duties of an executor are defined and pointed out by statute, and that those duties are merely to settle the affairs of the estate, and that the executor, unless he is empowered by the will, or authorized by the court, must adhere substantially to the requirements of the statute, and that if he does not, the estate is not liable for his contracts, although he may be liable personally. "That by any promise or contract made by an executor, the consideration for which promise or contract arises after the death of the testator or intestate, the estate can not be charged, but that the executor or administrator is personally liable on his contract, and whether the amount is to be repaid from the estate is a question for the court of probate, in the settlement of his account." 5 Gray, 405.

We are not prepared to say that these positions are not well taken. We think it is the duty of the executor or administrator to adhere substantially to the statute defining his duties. If the executor, in anticipation of the collection of debts due to a solvent estate, pays certain debts owing by the estate out of his own pocket, there can be no doubt that the estate is bound to repay him, although he is not following the letter of the statute; and if, instead of taking the money out of his own pocket, he borrow the money from a friend on the credit of the estate, the estate is equally bound to repay the money; for the statute is substantially complied with, though in a circuitous way, the assets of the estate still paying the debts of the estate. It may be said in the latter case that the remedy of the lender would be against the executor personally, and that the executor would then have his claim over against the estate. But this would only be a circuity of action, the result being still the same, and the estate ultimately liable.

So in the case of *James S. White, administrator of Taylor S. Turpin* v. *Edward J. Turpin,* 16 Ohio St. 270. In this

case the administrator, Edward J. Turpin, of the ancestor of Taylor S. Turpin, instead of having the lands of the infant heir sold to pay the debts of the estate, by the advice of the relatives of the heir, appropriated the rents of the heir's land for that purpose. The lands of the heir were near the city of Cincinnati and were rapidly rising in value, and the appropriation of the rents, instead of the sale of the land to pay the debts, was for the benefit of the estate and was carried out in good faith. The heir died, and his administrator sued the administrator of the ancestor's estate for the rents thus applied. The Supreme Court held that the administrator of the heir could not afterward recover such rents from the administrator of the ancestor, although the arrangement had the effect to change the distribution of the infant's estate to the extent of the rents so applied. And the court put their decision upon the ground that the application of the rents, so made, was for the benefit of the heir.

Now here the statute was not strictly followed, but as the arrangement had the effect to pay off the debts of the estate, and was for the benefit of the heir, the court held that the administrator did right.

In the case of *Arbuckle's executors* v. *Tracy's administrators*, 15 Ohio, 432, the facts were these: On June 30, 1829, B. F. Tracy and others became sureties for Arbuckle, on a note for $559, and on the 25th April, 1833, they also became his sureties on another note for $689, on both of which notes there were judgments against said Tracy's estate. Arbuckle's estate has paid about $700 on said notes, leaving from $1,000 to $2,000 due. Tracy died January, 1834, and by his last will and testament appointed V. J. Card his executor, expressing the wish that he " should take the whole management of settling his affairs and estate," and giving him " full power to settle each and every demand in law and equity." Card accepted the trust, gave bonds, and acted as executor until April or July, 1840, when, his account having been filed and approved, he re-

signed, and the respondents, Foote and Russell, were appointed administrators *de bonis non*. After said notes became due, and before suit upon them, to wit, April 9, 1835, Arbuckle, whether at the instance of Card or of his own mere motion does not appear, placed in Card's hands sundry notes amounting to the sum of $396, and took from him a receipt as follows: "Received of Andrew Arbuckle the notes, of which the foregoing is a list, as collateral security to indemnify me as executor of the last will and testament of Benjamin F. Tracy, deceased, against the payment of two certain notes," describing them, and adding: "Now if the said Arbuckle shall save harmless the estate of the said Tracy from the payment of the notes specified in the receipt, and so signed by the said Tracy and others, as aforesaid, then I am to account to said Arbuckle for the notes received of said Arbuckle, as per the foregoing list." Dated April 9, 1835; signed Varnum J. Card, executor of Benjamin F. Tracy. Of these notes, Card collected part, using his name as executor, and, by reasonable diligence, might have collected most of the balance; but no part of said notes or of the money collected thereupon ever came to the use of Tracy's estate, or was applied for its benefit, or in any way intermingled with its assets. Card's account, filed, showed him largely indebted to Tracy's estate, but embraced none of the collections from these notes.

The object of the suit was to subject the estate of Tracy to the payment of the money collected by Card on the notes placed in his hands by Arbuckle. The Supreme Court decided that the plaintiffs could not recover, because the estate of Tracy derived no benefit from the transaction. But the court say: "If Card, the administrator, had collected any money, and applied it to the benefit of Tracy's estate, to that extent the estate would be liable; but this is not pretended."

These are the only cases in Ohio bearing directly on the question before us; and they show that, although the

executor or administrator does not follow the statute, yet if the contracts of the executor or administrator, in relation to the debts of the estate, be for the benefit of the estate, and the money obtained upon such contracts be applied to the payment of the debts of the estate, the estate is bound by such contracts.

As before stated, it is also claimed, by counsel for defendant, " that by any promise or contract, made by an executor or administrator, the consideration for which arises after the death of the testator or intestate, the estate can not be charged, but that the executor or administrator is personally liable on his contract." This is the language of the court in 5 Gray, 405, and we are not prepared or disposed to say it does not correctly state the law. Suppose the executor, not being authorized by the will, should contract for the erection of a house, and promise to pay for it out of the assets of the estate. Here, the consideration of the promise wholly arising after the death of the testator, the estate would not be bound by the contract. But suppose the executor, in order to pay off debts contracted and owing by his testator, borrows money to pay the same, and does pay the debts with the money so borrowed, and promises to repay the lender out of the assets of the estate. Here the consideration for the promise is a debt contracted by the testator in his lifetime, and the promise is substantially to the lender, " If you pay certain debts of the testator I will see that you are repaid by the estate." Whether the lender pays the debt directly, or gives the money to the executor to pay it, is all the same; and, in either case, the consideration upon which the money is really paid is the promise or contract of the testator in his lifetime, and is not therefore a consideration arising after his death.

Now the case just supposed is this case. Andrew Nulsen, the executor, borrows money from John Behrens, the plaintiff, to pay debts contracted by the testator, Francis Nulsen, and does pay such debts with such money. It is

true, that the administrator is carrying on business with the assets of the estate, for the estate, and out of the profits of this business is paying off the debts of the estate. Now, whether the money loaned by Behrens went to pay off debts directly, or whether part of it went into the business, and so assisted in making profits with which the debts were paid, it seems to us can make no difference. In either case Behrens' money helped to pay off the debts of Francis Nulsen, and the estate derived the benefit of his money, and in law and good conscience the estate ought to repay him.

On the trial of the case, the court permitted the plaintiff to offer evidence to the jury tending to show that the business carried on by the executor for the estate was profitable, to the admission of which the defendant excepted. Afterward the defendant desired to offer evidence tending to prove that said business was unprofitable, which the court refused to give to the jury, to which ruling the defendant again excepted. Now, in reference to these rulings, the only question is, whether the admission or rejection of such evidence was material on either side. It was not denied, at the trial, that the estate of Francis Nulsen was solvent, and therefore it could make no difference to the creditors of said estate whether the business carried on by his executor was profitable or not. In either case, the creditors have either been paid or will be paid without any reference to such business. And we suppose the judge, at the trial, after having admitted evidence tending to show that the business was profitable, and seeing the direction the evidence was taking, and that it was consuming the time of the court unnecessarily, concluded to rule the further hearing of it out. And in this we see no error.

Before the trial, an agreed statement of facts had been signed by the attorneys of the parties out of court, and it was claimed by the defendant that no other evidence should be offered to the jury than that contained in said statement; the defendant excepted to the admission of all other evi-

dence. Neither party was taken by surprise at the trial, by reason of the agreement, nor put to any disadvantage. It is said, however, that by reason of such agreement the defendant paid to Behrens the balance of his loan of $767, and therefore the plaintiff should be bound by it. The answer to this is, that in paying the balance the defendant did no more than he was bound to do in law. We do not see that the defendant was prejudiced or deprived of any right by the court admitting evidence outside of the agreed statement of facts.

Exceptions were also taken, at the trial, to the charge of the court and to the refusal of the court to charge as asked. There are a number of such exceptions, but the charges excepted to are in substance, that if the jury found, from the evidence, that the estate derived the benefit of the plaintiff's money the defendant was liable; and as the charges refused were the reverse of this, we see no error in this part of the record.

The motion for a new trial is overruled, and judgment entered for the plaintiff upon the verdict, for the sum of $2,666.02, and interest from the 18th day of May, A. D. 1869.